**JS-6**

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE KU FANG LIN and MUI FONG TENG,<br><br>Debtors | Case No.: 2:26-cv-06928-MWC<br><br>ORDER AFFIRMING BANKRUPTCY COURT'S JUNE 9, 2026 ORDER DENYING APPELLANTS' MOTION TO SET ASIDE |
| MULJONO LOEKMAN; PAAS. LLC; PAAS II, LLC; and 21450 GOLDEN SPRINGS, LLC,<br><br>Plaintiffs<br><br>vs.<br><br>KU FANG LIN aka DAVID LIN aka DAVID KU LANG LIN, and MUI FONG TENG aka MUI FONG LIN,<br><br>Defendants | |

///

///

///

///

## I. Background

Debtors Ku Fang Lin, aka David Lin, and Mui Fong Teng, aka Mui Fong Lin, filed a Chapter 7 Voluntary Petition for Bankruptcy on May 20, 2024. (Exh. 9). On August 19, 2024, Plaintiffs Muljono Loekman, PAAS LLC, PAAS II LLC, and 21450 Golden Springs LLC initiated an adversary proceeding against debtors Ku Fang Lin and Mui Fong Teng. (Exh. 10). The bankruptcy court conducted trial in the adversary proceeding on April 7, 2026 and entered judgment in favor of Defendants/Debtors on April 20, 2026. (Exh 12; Exh. 6).

On April 29, 2026, Plaintiffs filed their motion to set aside and/or amend the judgment in the adversary proceeding. (Exh. 3). Defendants/Debtors opposed. (Exh. 11). On June 9, 2026, the bankruptcy court denied the motion. (Exh. 2). Plaintiffs filed this appeal, arguing the bankruptcy court erred when it: (1) did not apply rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure to set aside the judgment; (2) failed to apply the doctrine of judicial estoppel to set the judgment; and (3) failed to properly apply Federal Rule of Civil Procedure 60(b)(3) based on the fraud misrepresentation by the Defendants/Debtors. (Dkt. #1).

## II. Standard of Review

Legal conclusions made by the bankruptcy court are reviewed de novo. (*In re Meruelo Maddux Props., Inc.*, 667 F.3d 1072, 1077 (9th Cir. 2012). Because Appellants challenge the legal conclusions reached by the bankruptcy court, the Court reviews these determinations de novo.

III. Discussion

A. The Motion Was Timely

Appellants argue the bankruptcy court erred when it did not apply rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure to set aside the judgment. Appellants' Opening Brief ("AOB") at 11.

Appellants merely cut and paste the language of Federal Rules of Bankruptcy Procedure, rules 9023 and 9024 into their opening brief with no analysis or argument.

Federal Rules of Bankruptcy Procedure, rule 9023 states that Federal Rule of Civil Procedure 59 applies in a bankruptcy case, that a motion for a new trial or to alter or amend a judgment must be filed within 14 days after the judgment is entered, and within 14 days after judgment is entered, the court may, on its own, order a new trial. Fed. R. Bankr. P. 9023.

Federal Rules of Bankruptcy Procedure, rule 9024 states that Federal Rule of Civil Procedure 60 applies in a bankruptcy case, with some exceptions. A motion under Rule 60(b) must be made within a reasonable time . . . and (3) no more than a year after the entry of the judgment or order or the date of the proceeding. Fed. R. Civ. P. 60

A motion for a new trial must be filed no later than 28 days after the entry of judgment. Fed. R. Civ. P. 59. Judgment in this case was entered on April 20, 2026. Appellants filed their motion nine days later, on April 29, 2026. The motion was timely and the bankruptcy court properly considered the motion.

B. Judicial Estoppel

Appellants next argue the bankruptcy court erred when it failed to apply the doctrine of judicial estoppel to set the judgment. AOB at 13.

Judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000). "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 (1895).

Because the rule is intended to prevent "improper use of judicial machinery," *Konstantinidis v. Chen*, 626 F.2d 933, 938 (D.C. Cir. 1980), judicial estoppel "is an equitable doctrine invoked by a court at its discretion," *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (internal quotation marks and citation omitted).

The United States Supreme Court identifies three factors that courts may consider in determining whether to apply the doctrine of judicial estoppel:

> [S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999); *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999); *Hossaini v. W. Missouri Med. Ctr.*, 140 F.3d 1140, 1143 (8th Cir. 1998); *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 98 (2d Cir. 1997). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982). Absent success in a prior proceeding, a party's later inconsistent position introduces *783 no

> "risk of inconsistent court determinations," *U.S. for Use of Am. Bank v. C.I.T. Const. Inc. of Texas*, 944 F.2d 253, 259 (5th Cir. 1991), and thus no threat to judicial integrity. *See Hook*, 195 F.3d at 306; *Maharaj*, 128 F.3d at 98; *Konstantinidis*, 626 F.2d at 939. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *See Davis*, 156 U.S. at 689; *Philadelphia, W. & B.R. Co. v. Howard*, 54 U.S. 307, 14 L. Ed. 157 (1851); *Scarano v. Cent. R. Co. of N. J.*, 203 F.2d 510, 513 (3d Cir. 1953) (judicial estoppel forbids use of "intentional self-contradiction ... as a means of obtaining unfair advantage"); *see also* 18 Wright § 4477, p. 782. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts. In this case, we simply observe that the factors above firmly tip the balance of equities in favor of barring New Hampshire's present complaint.

*New Hampshire v. Maine*, 532 U.S. 742, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001).

The Ninth Circuit limits the application of judicial estoppel to cases where the court relied on, or "accepted," the party's previous inconsistent position. *Interstate Fire & Cas. Co., an Illinois Corp. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998), *as amended* (May 13, 1998); *Masayesva for & on Behalf of Hopi Indian Tribe v. Hale*, 118 F.3d 1371, 1382 (9th Cir. 1997).

1. The State Court Proceedings

The matter of Muljono Loekman, et al. v. David Lin, et al., Los Angeles Superior Court case number BC642994, was tried to the bench on November 19, 20, and 21, 2018. The state court found in favor of plaintiffs and, further, made a finding of malice, oppression or fraud to support a finding of punitive damages. On June 3, 2019, the state court conducted a trial on what amount of punitive damages, if any, should be awarded.

During those proceedings, David Lin testified that he had two individual bank accounts, each containing about $1,000. Exh. 4, 31: 16-23. David Lin also apparently appeared for several judgment-debtor examinations relating to the collection of the judgment in that case. *See* Exh. 12, 36: 23 – 37: 3.

2. The Bankruptcy Court Proceedings

The bankruptcy court held an evidentiary hearing consisting of extensive examination of David Lin and Mui Teng concerning their finances. (Exh. 12). In addition to this testimony, the bankruptcy court received a transcript of a judgment debtor's examination, tax returns for the years 2021,2022, and 2023, and an amended statement of financial affairs. (Exh. 12). The only evidence this court has concerning the post-trial adversarial proceedings is the June 9, 2026 order denying the motion to set aside the judgment. (Exh. 2)

In their opening brief, Appellants represent that the bankruptcy court "without any findings whatsoever simply held '. . .there's nothing new here. . .' See, Transcript from the May 26, 2026 Hearing (ER Vol. I, Ex. 13)." Exhibit 13 is not the transcript of the May 26, 2026 hearing; rather, it is a copy of the adversary complaint and the state court complaint in the matter

of Muljono Loekman, et al. v. David Lin filed in the Los Angeles Superior Court and referenced above. (Exh. 13).

On this record, the Court cannot conclude that Appellees' position in the bankruptcy proceedings was clearly inconsistent with their earlier position, that that judicial acceptance of any inconsistent position in the bankruptcy proceeding would create the perception that either the first or the second court was misled, that Appellees would derive an unfair advantage or impose an unfair detriment on Appellants if not estopped, or that the bankruptcy court relied on, or accepted the position Appellees took in the state court action.

C. Federal Rule Of Civil Procedure 60(b)(3)

Finally, Appellants argue the bankruptcy court erred when it failed to properly apply Federal Rule of Civil Procedure 60(b)(3) based on the fraud misrepresentation by the appellees. AOB at 15.

Rule 60(b)(3) grants the court discretion to "relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60.

Appellants' argument is limited to fraud.

"To prevail, the moving party must prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense." *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000). "Fed. R. Civ. P. 60(b)(3) require[s] that fraud ... not be discoverable by due diligence before or during the proceedings." *Pac. & Arctic Ry. & Nav. Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991) *see Casey v. Albertson's Inc*, 362 F.3d 1254, 1260 (9th Cir. 2004).

Here, Appellants argue Appellees committed fraud by testifying that by January 2020 they had saved approximately $430,000 in cash at the annual savings rate of $18,000 to $20,000 for the prior 20 years In the bankruptcy case in light of the testimony proffered in the state court action that they only $2,000 in bank accounts and owned no other assets or liquid funds.

The argument is not supported by the record in the bankruptcy case. Appellants were permitted to cross-examine Appellees extensively concerning any inconsistent statements made under penalty of perjury concerning cash. *See* Exh. 12. Specifically, the record memorializes the following colloquy:

THE COURT: Let me -- counsel, let me stop you.
You started this whole conversation you were asking him --
you were asked about whether you had had any cash. Where is
that? You -- that's where we started this conversation.
Now, again, I'm not saying what you're asking is not
relevant. What I'm saying is, I had asked you specifically
where does it say in this deposition that it was asked his
-- when he has cash. And he said -- well, it -- thought it

was in the bank.

I'm asking you, which I asked you to begin with, would you please point out where you asked those questions. I'm not saying this question you're asking now is not relevant. That isn't the question that I asked you. So where is it in here?

MR. POLIS: Your Honor, what I'm getting at is --

THE COURT: No, I'm asking you a very straightforward question.

MR. POLIS: I don't have the answer to your questions, your Honor.

Exh. 12, 34: 7 – 25.

After some discussion about where the relevant testimony could be found in the record for purposes of presenting it to the bankruptcy court, the colloquy continues:

THE COURT: Let me stop -- counsel, you're not answering my question. This is -- very clear. You were asking him about, did you have -- you didn't mention any -- basically, it's questions in the deposition that you had this cash. And I asked you, do you have a statement, and the question that actually goes to that direct point whether he was asked, do you have any cash. Remember that statement? Where is that in your filing?

MR. POLIS: Your Honor, I have so many tabs --

THE COURT: No, no. You say you have them marked.

MR. POLIS: I don't know -- I don't know, your Honor. I don't know.

THE COURT: Well, take a look.

MR. POLIS: And I'm sorry. I don't -- I mean, I don't know sitting here right now because I've tabbed this for the four depositions that we -- or the four judgment debtor exams.

What I do know, and that's my point --

THE COURT: Let me stop -- let me stop you. You had -- you told me you knew that you had this all marked up. And I said, I'm not going to go through the entire depositions. Show me right now where you -- where the question was. Because you just told me a few minutes ago you had it all marked, and I want to find it.

MR. POLIS: What I have marked, your Honor -- if I could finish, please. What I have marked is the following. The repeated testimony by the Debtor that he was using company money, loans from friends, cash jobs, et cetera, to fund his lifestyle. If I --

THE COURT: That's okay, but I'm -- that's okay, and I'll allow you to do that.

MR. POLIS: And that's what I'm getting at, your

Honor.

THE COURT: But before you get to that, I want you to point out what you told me you had, namely, the specific question he was asked, do you have any -- any cash?

MR. POLIS: I don't have that in front of me. I don't have exactly where that's at. I have multiple tabs on these.

THE COURT: Well, find it.

MR. POLIS: Your Honor, I don't have it.

THE COURT: Are you telling me you don't know?

MR. POLIS: Sitting -- I mean, I have three OJD transcripts to go through. If you want me to take a break and look through these --

THE COURT: Well, I don't need a break. You told me you knew you could find it.

Exh. 12, 36: 11 - 38: 7.

In short, Appellants had the opportunity to and, indeed did, present their argument that Appellees presented contradictory testimony concerning cash assets in the state and bankruptcy proceedings. The bankruptcy judge, with the benefit of these arguments and after giving Appellants an opportunity to be heard and to present supporting evidence, rejected this argument.

After conducting a de novo review of the entire record in this case, the Court finds that Appellants have failed to prove by clear and convincing evidence that the bankruptcy order was

obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the Appellants from fully and fairly presenting their case.

IV. Conclusion

The bankruptcy court's June 9, 2026 order denying Appellants' motion to set aside is AFFIRMED.

**IT IS SO ORDERED**.

DATED: September 25, 2026

Honorable Michelle Williams Court
UNITED STATES DISTRICT COURT JUDGE